**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America | No. CR-24-7592-TUC-AMM |
| Plaintiff, | **ORDER** |
| v. | |
| Ali Mahmud Ali, | |
| Defendant. | |

On March 10, 2025, Magistrate Judge Michael A. Ambri issued a Report and Recommendation ("R&R") recommending that this Court deny Defendant Ali Mahmud Ali's Motion to Dismiss Indictment. (Docs. 20, 38.) On March 18, 2025, Defendant filed written objections. (Doc. 39.) The Government responded on April 1, 2025. (Doc. 40.) Upon de novo review, the Court will deny the Motion to Dismiss Indictment.

**I.     Standard of Review**

The standard of review applied to a magistrate judge's report and recommendation depends on whether a party files objections. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). A district court need not review "a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Id.* at 150. If, however, a party objects, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §

636(b)(1)(C). Although the district court is not required to review an issue de novo absent a proper objection, the statute "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

## II. Uncontested Factual and Procedural History

Defendant is a citizen of Eritrea. (Doc. 38 at 2 (citing Doc. 20 at 2).) He entered the United States without inspection near San Diego, California on May 2, 2023. (*Id.*; Doc. 20 at 2.) On May 3, 2023, Defendant was arrested, and he "claimed a fear [of] return[ing] to Eritrea." (Doc. 20 at 2.)

In a Record of Deportable/Inadmissible Alien, Form I-213, the Department of Homeland Security indicated that Defendant did "not appear to be a threat to national security, or public safety, and was released from the custody of the Department of Homeland Security by 'Order of Recognizance' (O.R.) pending his immigration hearing." (Doc. 20-1 at 4.)

The Order of Release on Recognizance, Form I-220A, dated May 9, 2023, specifically notified Defendant: "You have been arrested and placed in removal proceedings . . . . [Y]ou are being released on your own recognizance provided you comply with the following conditions[.]" (*Id.* at 6.) The conditions included that Defendant "must surrender for removal from the United States if so ordered[,]" and "must not violate any local, State, or Federal laws or ordinances." (*Id.*) The Order of Release on Recognizance also informed Defendant that "[f]ailure to comply with the conditions of this order may result in revocation of [his] release and [his] arrest and detention by the Department of Homeland Security." (*Id.*) Defendant asserts that he has since flown roundtrip within the United States on four occasions using his Eritrean identification and the Order of Release on Recognizance. (Doc. 20 at 2.)

Defendant also received a Notice to Appear, Warrant for Arrest, Notice of Custody Determination, and Change of Address Form. (*Id.*; Doc. 20-1 at 7.) The Notice to Appear designated Defendant as "an alien present in the United States who has not been admitted or paroled" and ordered him to appear before an immigration judge. (Doc. 20-1 at 7.)

- 2 -

On May 18, 2024, Defendant filed an Application for Asylum and for Withholding, Form I-589. (Doc. 20-1 at 11.) A hearing on his asylum application is scheduled for September 14, 2026. (*Id.*)

On August 16, 2024, Defendant was arrested by the Tucson Police Department for drug possession and disorderly conduct with a weapon. (Doc. 20 at 3.) Upon his release from state custody, Defendant was arrested and charged in the instant case. (*Id.* at 3–4.)

Defendant was indicted on October 30, 2024. (Doc. 9.) The indictment charged one count of illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A) and 18 U.S.C. § 924(a)(8). (Doc. 9.) It reads: "On or about August 16, 2024, in the District of Arizona, the [D]efendant Ali Mahmud Ali, knowing he was an alien illegally and unlawfully in the United States, did knowingly possess a firearm . . . ." (*Id.* at 1.) According to the Complaint, Defendant "was seen chasing his intimate partner southbound on South Sixth Avenue while brandishing a black firearm." (Doc. 1 at 1.)

On December 9, 2024, Defendant filed his Motion to Dismiss Indictment. (Doc. 20.) The Government filed its Response on January 31, 2025. (Doc. 32.) Defendant replied on February 7, 2025. (Doc. 33.) A hearing was held on the motion before the Magistrate Judge on February 14, 2025. (Doc. 36.)

**III.   Report and Recommendation**

**A. Claim One: Omitted Implied Element**

Defendant first argues that the indictment fails to state an offense because it omits the implied element of illegal or unlawful presence. (Doc. 20 at 6–8.)

**1. Magistrate Judge's Findings**

The Magistrate Judge found that "'illegal or unlawful presence' is not an implied element of 18 U.S.C. § 922(g)(5)(A)." (Doc. 38 at 5.) He rejected the argument that *United States v. Lopez-Perera*, 438 F.3d 932 (9th Cir. 2006) held that "illegal or unlawful presence" is an implied element of § 922(g)(5)(A). (*Id.* at 4.) He reasoned that, although the Ninth Circuit discussed the statutory phrase "illegally or unlawfully in the United States" in terms of physical presence, it did so only to explain the meaning of that element in the statute. (*Id.*)

The Magistrate Judge similarly found that *United States v. Venegas-Vasquez*, 376 F. Supp. 3d 1094, 1097 (D. Or. 2019) did not hold that "illegal or unlawful presence" is an implied element. (*Id.*) Instead, "[t]he *Venegas-Vasquez* court held that the phrase 'illegally or unlawfully in the United States' must mean 'illegally or unlawfully present' when applied to a DACA recipient under the rule of lenity" because, at the time, the DACA website stated that recipients were "considered lawfully present." (*Id.*)

The Magistrate Judge concluded that the rule of lenity does not require a similar finding for asylum applicants because the government has not made any equivalent pronouncement that aliens who entered unlawfully but who now have pending asylum applications are "lawfully present" in the United States. (*Id.* at 5.) The Magistrate Judge further emphasized that Defendant cannot point to any statute or authority establishing that he is lawfully present by nature of his pending asylum application. (*Id.* at 5–6.)

### 2. Defendant's Objections

Defendant asserts that the Magistrate Judge failed to address his argument that *Lopez-Perera* has been abrogated by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) because *Lopez-Perera* relied on the definition of "illegally or unlawfully in the United States" from the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF"). (Doc. 39 at 1.) Therefore, Defendant argues that the Court cannot rely on *Lopez-Perera*'s interpretation of "illegally or unlawfully in the United States" because *Lopez-Perera* defined that term by deferring to a federal agency's interpretation of a criminal statute. (Doc. 20 at 7–8.)

Defendant further asserts that the Magistrate Judge failed to determine whether § 922(g)(5)(A) requires unlawful presence or merely a lack of legal status. (*Id.* at 2.) He argues that because it is ambiguous, "lenity requires an interpretation in Mr. Ali's favor." (*Id.* at 4.) Under that interpretation, Defendant argues, the indictment does not charge criminal conduct because Defendant was inherently "authorize[d]" to be present in the United States while his asylum application is pending. (*Id.* at 5.) He cites to 8 U.S.C. § 1182(a)(9)(B)(iii)(II), which states:

> No period of time in which an alien has a bona fide application

> for asylum pending under section 1158 of this title shall be taken into account in determining the period of unlawful presence in the United States under clause (i) unless the alien during such period was employed without authorization in the United States.

Defendant also cites to 8 U.S.C. § 1158(d)(2), which authorizes asylum applicants to receive employment authorization, and 8 C.F.R. § 208.8(a), which states that an asylum applicant who leaves the United States during the pendency of his or her application is presumed to have abandoned his or her asylum application. (*Id.* at 7.)

### B. Claim Two: Lack of Specificity

Defendant next argues that the indictment lacks specificity because it fails to allege the circumstances that rendered Defendant "illegally and unlawfully in the United States." (Doc. 20 at 9–11.) He states, "an alien who entered illegally does not violate § 922(g)(5)(A) if he cannot be deported while his application for status remained pending." (*Id.* at 9.)

#### 1. Magistrate Judge's Findings

The Magistrate Judge found that "the indictment informs Defendant that the government intends to prove that he was 'illegally or unlawfully in the United States.'" (Doc. 38 at 7.) He reasoned that there is no requirement to "anticipate Defendant's argument and specify why a defendant who enters without inspection but who has properly filed an application for asylum is still subject to the statute." (*Id.*)

The Magistrate Judge also rejected Defendant's argument that § 922(g)(5)(A) does not apply to an alien who is released while his asylum application is pending. (*Id.* at 8.) Although the Magistrate Judge recognized that Defendant "provides citations from which a reasonable person could argue for a good faith extension of the law . . . [,]" he explained that does not require a finding that the statute does not apply to Defendant. (*Id.*)

#### 2. Defendant's Position

In his objections to the R&R, Defendant does not expressly object to the Magistrate Judge's finding on this issue. (Doc. 39 at 7.) Rather, he explains that his arguments under Claim Two "are best considered as supporting his Claim One" and "[i]f the Court determines under Claim One that the statute requires an element of unlawful presence, or

if it determines that the undisputed facts do not fall within the statute . . . [,] then dismissal is required." (*Id.*)

### C. Claim Three: Void for Vagueness

Defendant also argues that the indictment must be dismissed because § 922(g)(5)(A) is void for vagueness as applied to Defendant. (Doc. 20 at 12.) He asserts that an alien of ordinary intelligence in Defendant's position would not have understood that he was committing a crime by possessing a firearm because he properly filed for asylum, was released, was eligible to apply for a work permit, and had been allowed to fly domestically. (*Id.*) Defendant states "[t]hese official acts and express communications tolerating his presence fostered in him—as they would any person of ordinary intelligence—a belief that, although without formal status, he was not 'illegally or unlawfully in the United States' while his asylum application remained unadjudicated." (*Id.* at 13.)

#### 1. Magistrate Judge's Findings

The Magistrate Judge disagreed finding that, even if he had applied for asylum, "a reasonable person would not understand that he was forbidden from possessing firearms." (Doc. 38 at 10.) He outlined Defendant's arrest, his placement in removal proceedings, and the various warnings he received that he was considered "an alien present in the United States without being admitted or paroled . . . ." (*Id.* (quoting Doc. 20-1 at 4).) The Magistrate Judge reasoned that, under these circumstances, "[a] person of ordinary intelligence would understand that simply filling out a form [for asylum] does not make that person legally or lawfully in the United States." (*Id.*)

The Magistrate Judge further found that while the warning on the Application for Asylum and for Withholding, Form I-589 implies that removal will be stayed until asylum is denied, this does not render reasonable the belief that Defendant was now legally or lawfully in the United States and permitted to possess firearms. (*Id.* at 11.) Ultimately, he concluded that "[t]he government's forbearance" in not detaining Defendant or in not refusing to allow him to live or work while his asylum application is pending, does not affirmatively express that Defendant is lawfully in the United States. (*Id.*)

///

### 2. Defendant's Objections

Defendant argues that the Magistrate Judge did not "account for the totality of the undisputed circumstances that subsequently communicated to him that, although without legal status, he was not 'unlawfully in the United States.'" (Doc. 39 at 8.) Defendant cites *Lopez-Perera* for the proposition that § 922(g)(5)(A) is unconstitutionally vague because it does not provide a definition of "illegally or unlawfully in the United States." (*Id.*) Defendant further emphasizes that the relevant period is during the pendency of his asylum application, not if or when it is denied. (*Id.* at 8–9.)

## D. Claim Four: Second Amendment

Defendant's final argument for dismissal is that § 922(g)(5)(A) violates the Second Amendment as applied because, under the test established in *New York State Rifle & Pistol Association et al. v. Bruen*, 597 U.S. 1 (2022), the Government "has not shown a regulatory tradition that prohibits aliens with properly filed asylum applications from possessing firearms." (Doc. 20 at 14.)

### 1. Magistrate Judge's Findings

The Magistrate Judge rejected Defendant's Second Amendment argument, citing the Ninth Circuit's holding in *United States v. Torres*, 911 F.3d 1253 (9th Cir. 2019) that § 922(g)(5)(A) is constitutional. (Doc. 38 at 12.) Although *Torres* was decided before the Supreme Court's ruling in *Bruen* changed the mode of analysis in Second Amendment cases, the Magistrate Judge found that *Torres* has not been overruled because its holding is not "clearly irreconcilable" with *Bruen*. (*Id.* at 12–13.)

He reasoned that *Bruen* "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms[,]" and *Torres* focused on persons illegally or unlawfully in the United States. (*Id.* at 13 (quoting *Bruen*, 597 U.S. at 71).) The Magistrate Judge also concluded that Defendant is "not considered an 'ordinary, law-abiding, adult citizen[].'" (*Id.* at 14 (quoting *Bruen*, 597 U.S. at 31).) Because the Magistrate Judge found that the facts are "materially different," he concluded that it is not clear that the Supreme Court's holding in *Bruen* would apply to § 922(g)(5)(A). (*Id.*)

///

### 2. Defendant's Objections

Defendant objects to the Magistrate Judge's reliance on *Torres*. (Doc. 39 at 9.) He argues that *Torres*' means-end analysis cannot survive *Bruen* and that the Court must assess anew whether § 922(g)(5)(A) violates the Second Amendment. (*Id.*)

## IV. Discussion

### A. Claim One

The Court finds that § 922(g)(5)(A) does not contain the implied element of "illegal or unlawful presence," and the indictment is valid as to this challenge. First, to the extent *Lopez-Perera* remains binding, the Ninth Circuit did not hold that physical presence is an implied element of an offense under § 922(g)(5)(A). *Lopez-Perera* dealt with factually distinct circumstances where the individual charged with violating § 922(g)(5)(A) was at a port of entry detained by officials during the alleged offense. 438 F.3d at 932–33, 935. The court, therefore, examined the meaning of "in" to determine if the statute applied to an individual at a port of entry detained by officials. *Id.* at 935. In doing so, the court relied on the ATF's definition of "in the United States," meaning, having "entered" the United States. *Id.* at 934–35. To further understand the term of art "entered," the court turned to immigration law and found that "entered" means to be both physically present and free from official restraint. *Id.* at 935.

As the Magistrate Judge explained, *Lopez-Perera* raised the issue of physical presence merely to understand the meaning of the existing element "in the United States" within a particular context that is not factually applicable here. The holding in *Lopez-Perera* did not create a de facto additional element of the statute.

Because *Lopez-Perera* did not hold that § 922(g)(5)(A) includes an implied additional element of physical presence, the Court need not rely on it to decide whether to dismiss the indictment in the instant case. Similarly, the Court need not address whether *Loper Bright* abrogated *Lopez-Perera* in part or in whole because the Court does not rely on the definition of "in the United States" at issue in *Lopez-Perera* to resolve the issues presently before the Court.

Second, the District of Oregon's ruling in *Venegas-Vasquez* is neither binding nor

persuasive authority in this case. *Venegas-Vasquez* dealt with the factually distinct situation of a DACA recipient charged with violating § 922(g)(5)(A). 376 F. Supp. 3d at 1097. It addressed how the term "illegally or unlawfully" applied to that context. *Id. Venegas-Vasquez* did not consider whether an alien with a pending asylum application is "illegally or unlawfully in the United States."

Furthermore, in *Venegas-Vasquez*, the United States Customs and Immigration Services' website specifically informed DACA recipients: "[Y]our period of stay is authorized by the Department of Homeland Security while your deferred action is in effect and, for admissibility purposes, you are considered to be *lawfully present in the United States* during that time." *Id.* at 1100 (emphasis added). Defendant does not point to any equivalently overt official statement that asylum applicants who otherwise entered the United States without authorization are considered lawfully present during the pendency of their asylum application.

Moreover, Defendant was not inherently authorized to be in the United States such that it would be reasonable for him to believe that his alleged possession of a firearm would not implicate § 922(g)(5)(A). Defendant was repeatedly informed that he was considered "an alien present in the United States who has not been admitted or paroled." (Doc. 20-1 at 7.) Although he was released on his own recognizance and permitted a stay of prosecution until such time that his asylum application was denied, this did not "inherently" make his presence lawful. A stay of prosecution does not equate to legal or lawful presence in the United States.

Because the Court finds (1) § 922(g)(5)(A) does not contain an additional implied element of physical presence and (2) a stay of prosecution did not inherently authorize Defendant to be in the United States, the indictment covers adequately states an offense. The Court will overrule Defendant's objections and adopt the Magistrate Judge's finding as to Claim One.[1]

---

[1] The Court will not review de novo Claim Two of the Motion to Dismiss Indictment because Defendant did not specifically object to the Magistrate Judge's finding. Rather, Defendant asserts that his arguments in Claim Two "are best considered as supporting his Claim One" if the Court concluded that the indictment omits an implied element or fails to

- 9 -

### B. Claim Three

The Court further finds that § 922(g)(5)(A) is not void for vagueness as applied to Defendant. The totality of the circumstances before and after Defendant applied for asylum establish that it was not reasonable to believe that Defendant was legally or lawfully in the United States or permitted to possess a firearm.

Defendant was first arrested after he crossed into the United States. He received a Record of Deportable/Inadmissible Alien and a Notice to Appear and was placed in removal proceedings. The Notice to Appear specifically categorized Defendant as "an alien present in the United States who has not been admitted or paroled." Although Defendant was released pending removal proceedings, his Order of Release on Recognizance also informed him that he was required to "surrender for removal from the United States if so ordered[,]" and warned him against violating any laws. As the Magistrate Judge concluded, "[a]t this point, a person of ordinary intelligence would understand that he was 'illegally or unlawfully in the United States' and was prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g)(5)(A)." (Doc. 38 at 10.)

The fact that Defendant applied for asylum did not suddenly make his presence lawful, and it is not reasonable to believe otherwise. The Application for Asylum and for Withholding, Form I-589 states that "[a]pplicants who are in the United States unlawfully are subject to removal if their asylum or withholding claims are not granted . . . ." This warning describes a stay of prosecution. That the United States will forgo prosecuting and removing asylum applicants pending adjudication of their claims does not mean that an applicant who otherwise unlawfully entered the county is now lawfully present. A person of ordinary intelligence would not reasonably believe that merely submitting paperwork confers legal presence. *See United States v. Rashwan*, No. 22-118, 2023 WL 4274989, at *4 (E.D. Penn. June 29, 2023) (quoting *United States v. Lucio*, 428 F.3d 519, 526 n.8 (5th Cir. 2005)) ("[G]iven that 'under § 922(g)(5)(B), an alien *granted* a nonimmigrant visa, with certain exceptions, is not permitted to carry a firearm . . . it would fashion a peculiar

---

cover criminal conduct. (*See* Doc. 39 at 7.) Upon review, the Court finds no clear error as to Claim Two.

- 10 -

result if we were to hold that an alien unlawfully within the United States who has simply submitted an application to adjust his status may permissibly possess a firearm, whereas an alien granted a nonimmigrant visa—and concomitantly, temporary lawful immigration status—may not.'").

The fact that Defendant was permitted to fly domestically and was eligible to apply for a work permit does not change the Court's analysis. Defendant was released on his own recognizance until at least his asylum hearing, which was scheduled for September 14, 2026. The fact that the United States allowed him to move throughout the country and earn a living during that lengthy interim does not render his otherwise unlawful presence lawful.

The Court will overrule Defendant's objections as to Claim Three and will adopt the Magistrate Judge's findings.

### C. Claim Four

Finally, the Court finds that § 922(g)(5)(A) does not violate the Second Amendment as applied to Defendant.

#### 1. *Torres* is "Clearly Irreconcilable" with *Bruen*

As a threshold matter, the Court must determine the appropriate test to apply to Defendant's Second Amendment argument. As the Magistrate Judge explained, "[b]inding authority must be followed unless and until overruled by a body competent to do so . . . ." *Hart v. Massanari*, 266 F.3d 1155, 1170–71 (9th Cir. 2001). There is an exception where the Supreme Court has not explicitly overruled a lower court case, but its decision nonetheless "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

The Magistrate Judge relied on the Ninth Circuit's holding in *Torres* because he found that *Torres* is not "clearly irreconcilable" with *Bruen*. Upon de novo review, however, this Court concludes that *Torres* is "clearly irreconcilable," and it must examine Defendant's Second Amendment claim using the text-and-history test established by the Supreme Court in *Bruen*.

The Ninth Circuit has recently specified that *Bruen* prescribed a new legal test for

"all Second Amendment challenges." *United States v. Duarte*, 101 F.4th 657, 665 (9th Cir. 2024), *overruled on other grounds by United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025) (en banc).[2] Before *Bruen*, the Ninth Circuit held in *United States v. Vongxay* that the Second Amendment did not unconstitutionally conflict with 18 U.S.C. § 922(g)(1), a subsection that prohibits felons from possessing a firearm. 594 F.3d 1111, 1114–15 (9th Cir. 2010). In so doing, the court employed the two-step tiered scrutiny test that *Bruen* invalidated. *Id.*

In its post-*Bruen* decision in *Duarte*, the Ninth Circuit held that *Vongxay* was "clearly irreconcilable" with *Bruen* because "'*Bruen* effected a sea change in Second Amendment law' by replacing this tiers-of-scrutiny framework with one grounded exclusively in text and history." 101 F.4th at 665 (quoting *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023), *rehearing en banc granted*, 86 F.4th 1038 (4th Cir. 2024)). In other words, *Vongxay* "did not grapple with" the textual and historical inquiries that *Bruen* now requires. *Id.* at 666. Neither did *Torres*.

In *Torres*, the Ninth Circuit applied the two-step tiered scrutiny test to determine what level of scrutiny to apply based on "(1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.'" *Torres*, 911 F.3d at 1262 (quoting *United States v. Chovon*, 735 F.3d 1127, 1138 (9th Cir. 2013)). As discussed above, this method of analysis does not survive *Bruen*. *See Duarte*, 101 F.4th at 665–66 (quoting *Miller*, 335 F.3d at 900) ("*Vongxay*'s wholesale omission of *Bruen*'s two-step methodology is 'clearly irreconcilable' with *Bruen*'s 'mode of analysis' for analyzing Second Amendment challenges.") Accordingly, *Torres* is "clearly irreconcilable" with *Bruen,* and the Court must determine anew whether § 922(g)(5)(A) violates the Second Amendment.

///

///

///

---

[2] Notably, at the time of the R&R, the Magistrate Judge did not have the benefit of the Ninth Circuit's recent en banc decision in *Duarte*.

- 12 -

### 2. Section 922(g)(5)(A) Does Not Violate the Second Amendment Under *Bruen*

#### a. *Bruen* Test

Under *Bruen*, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. The Court must "first consider whether the Second Amendment's plain text covers an individual's proposed course of conduct." *Duarte*, 137 F.4th at 752 (quoting *United States v. Perez-Garcia*, 96 F.4th 1166, 1178 (9th Cir. 2024)).

The plain text of the Second Amendment protects "the right of the people to keep and bear Arms . . . ." U.S. Const. amend. II. Therefore, the relevant inquiries are (1) "whether the challenger is part of the people whom the Second Amendment protects," (2) "whether the weapon at issue is in common use today for self-defense[,]" and (3) "whether the proposed course of conduct falls within the Second Amendment." *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (internal quotations omitted).

If the Court concludes that the text of the Second Amendment governs the person, weapon, and conduct, then the law restricting firearm possession is presumptively invalid unless "the modern regulation is 'relevantly similar' to historical laws and traditions . . . so as to 'evince[] a comparable tradition of regulation.'" *Perez-Garcia*, 96 F.4th at 1181. "Two metrics guide [this] analysis: (1) 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense' (the "how"); and (2) 'whether that burden is comparably justified' (the "why")." *Duarte*, 137 F.4th at 755 (quoting *Bruen*, 597 U.S. at 29 (citation omitted)). All that is required is "a well-established and representative historical analogue, not a historical twin." *Bruen*, 597 U.S. at 29. "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

///

### b. Application of *Bruen* Test

#### i. Step One

The Court begins with the most straight forward of the threshold questions—whether the Second Amendment protects the handgun ("Glock, model 19, 9mm caliber pistol") that Defendant allegedly possessed. (Doc. 9 at 1.) The Court finds that it does. *See, e.g.*, *Duncan v. Bonta*, 133 F.4th 852, 866–67 (9th Cir. 2025) ("The meaning of 'Arms' thus broadly includes nearly all weapons used for armed self-defense."); *Oregon Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 911 (D. Or. 2023) ("Courts have held that handguns are 'bearable arms' as contemplated by the Second Amendment.")

The more difficult questions are whether the Second Amendment protects unlawfully present aliens like Defendant and whether it covers the alleged conduct of "chasing his intimate partner . . . while brandishing a black firearm." (Doc. 1 at 1.) Other courts that have wrestled with the question of whether the term "the people" includes undocumented immigrants have assumed, without deciding, that it does. *See, e.g.*, *Torres*, 911 F.3d at 1257 (assuming without deciding "that the Second Amendment extends to unlawful aliens . . . ."); *United States v. Gil-Solano*, 699 F. Supp. 3d 1063, 1068 (D. Nev. 2023) (quoting *Torres*, 911 F.3d at 1261) ("Given the 'large and complicated' questions in this field, the ambiguity of controlling precedent, and the canon of constitutional avoidance, the Court will follow the Ninth Circuit's lead and assume, without deciding, that 'unlawful aliens . . . fall within the scope of the Second Amendment right as articulated under . . . .' *Bruen*."); *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045 (11th Cir. 2022) (assuming without deciding that undocumented immigrants are covered by the Second Amendment); *but see United States v. Sitaladeen*, 64 F.4th 978, 985–87 (8th Cir. 2023) (holding that § 922(g)(5)(A) does not govern conduct covered by the Second Amendment because aliens who are illegally or unlawfully present in the United States are not part of "the people"); *United States v. Sing-Ledezma*, 706 F. Supp. 3d 650, 673–73 (W.D. Tex. 2023), *rev'd in part on other grounds*, No. 24-50022, 2024 WL 5318254, at *1 (5th Cir. 2024) (holding that there is no historical basis to support § 922(g)(5)(A)'s disarmament of "all unlawfully present aliens"). This Court will follow suit and assume,

without deciding, that the Second Amendment covers unlawfully present aliens.

Notably, the conduct alleged in this matter raises analytical concerns for the Court. The Supreme Court has consistently held that possession of a firearm for self-defense is protected by the Second Amendment. *See, e.g.*, *Bruen*, 597 U.S. at 10 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010)) (the Second Amendment protects an individual's right to possess a firearm for self-defense both inside and outside the home). It is less clear, however, how pursuing another individual in the street while brandishing a firearm would be a proposed course of conduct that falls within the Second Amendment's "right to keep and bear Arms" absent a showing of self-defense. Because the Court has extremely limited knowledge of the circumstances underlying the alleged conduct in this matter, the Court will assume without deciding that the Second Amendment's text applies. The Court will proceed to the second step of the *Bruen* analysis.

### ii. Step Two

As a threshold matter, the Court echoes the opinion that "the present framework for assessing Second Amendment challenges is difficult to apply. Indeed, it sends jurists on a quixotic journey through history." *Sing-Ledezma*, 706 F. Supp. 3d at 672.

Nonetheless, the Court now joins other districts in the Ninth Circuit that have concluded post-*Bruen* that § 922(g)(5)(A)'s prohibition on possession of a firearm by an unlawfully present alien is sufficiently rooted in the history and tradition of the United States. *See, e.g.*, *Gil-Solano*, 699 F. Supp. 3d at 1069–72 (finding § 922(g)(5)(A) is constitutional based in part on an analogous "historical laws banning firearms ownership for those who refused to swear allegiance to the sovereign . . . ."); *United States v. DeBorba*, 713 F. Supp. 3d 1042, 1063 (W.D. Wash. 2024) ("[Section] 922(g)(5)(A) is still constitutional because disarmament of those who circumvent the legal system—including undocumented immigrants—is consistent with this Nation's historical tradition of firearm regulation."); *United States v. Vazquez-Ramirez*, 711 F. Supp. 3d 1249, 1259 (E.D. Wash. 2024) (quoting *Bruen*, 597 U.S. at 17) ("This Court agrees with the Government and the Nevada district court in *Gil-Solano* that loyalty oaths provide the required 'historical

tradition of firearm regulation.'"); *United States v. Bernabe-Martinez*, No. 1:22-cr-00276-AKB-1, 2024 WL 778114, at *6 (D. Idaho Feb. 26, 2024) (upholding § 922(g)(5)(A) because laws that prohibited those who did not swear an oath of allegiance provide sufficient historical support).

### 3. Defendant's Second Amendment Argument is Denied

For the reasons explained above, the Court finds that § 922(g)(5)(A) is a valid exercise of congressional authority and does not violate the Second Amendment as applied to Defendant as an unlawfully present alien.

Accordingly, the Magistrate Judge's recommendation is modified in part to find that *Torres* has been abrogated and to apply the *Bruen* test. The Court, however, adopts the Magistrate Judge's finding that § 922(g)(5)(A) is constitutional.

### V.     Conclusion

The Court has reviewed the Indictment (Doc. 11), Defendant's Motion to Dismiss Indictment (Doc. 20), the Government's Response to the Motion to Dismiss Indictment (Doc. 32), Defendant's Reply (Doc. 33), the Magistrate Judge's R&R (Doc. 38), Defendant's Objections (Doc. 39), and the Government's Response (Doc. 40). Upon de novo review of the issues raised in Defendant's Objections, the Court agrees with the Magistrate Judge's recommendation to deny the Motion to Dismiss Indictment.

 Accordingly,

**IT IS ORDERED**:

(1) Magistrate Judge Ambri's Report and Recommendation is **MODIFIED IN PART** and **ADOPTED**. (Doc. 38.)

(2) Defendant's Motion to Dismiss Indictment is **DENIED**. (Doc. 20.)

Dated this 23rd day of June, 2025.

Honorable Angela M. Martinez
United States District Judge